IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

OAKMONT NOTE GROUP LLC        :    CIVIL ACTION
                              :
         v.                   :
                              :
PETER J. ANDREWS, et al.      :    NO. 12-5257


MEMORANDUM

McLaughlin, J.                              August 14, 2013

      This lawsuit arises from a mortgage note sale that was allegedly induced by fraud. The plaintiff, Oakmont Note Group LLC ("Oakmont"), filed a two-count complaint against the two individual defendants and two corporate defendants based on their alleged participation in the fraudulent deal. Count I is for common law fraud, and Count II is for conspiracy and concert of action in the commission of fraud.

      Throughout the course of this litigation, both defendants' counsel and the Court have on numerous occasions identified problems with the plaintiff's case that bear on this Court's subject matter jurisdiction. The Court has recently issued two orders directing the plaintiff to provide information in an attempt to satisfy its jurisdictional concerns; however, the plaintiff still has not adequately demonstrated the existence of subject matter jurisdiction.

      The Court will, therefore, dismiss this case without prejudice for lack of subject matter jurisdiction.

A federal court cannot proceed to the merits of an action without first satisfying itself that it has subject matter jurisdiction, including the requirement that the dispute constitutes a "case" or "controversy" within the meaning of Article III. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998); Larsen v. Senate of Pa., 152 F.3d 240, 245 (3d Cir. 1998). The court has this "independent obligation to determine whether subject matter jurisdiction exists, even if its jurisdiction is not challenged." Nuveen Mun. Trust ex rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith Brown, P.C., 692 F.3d 283, 293 (3d Cir. 2012) (citing Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006)).

In the absence of affirmative evidence of its jurisdiction, a federal court is presumed to lack the authority to hear a case. Id. The party invoking the jurisdiction of the federal courts bears the burden of proving the existence of subject matter jurisdiction. Hertz Corp. v. Friend, 559 U.S. 77, 96 (2010). A plaintiff also always has the burden of establishing its standing to sue. Berg v. Obama, 586 F.3d 234, 238 (3d Cir. 2009). When the factual basis for subject matter jurisdiction is called into question, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Harris v. Kellogg Brown & Root Servs., Inc., No. 12-3204, 2013 WL 3942391, at *2 (3d Cir. Aug. 1, 2013)

(precedential) (quotation marks and citation omitted).

This case was initiated on September 13, 2012. In its two-count complaint, Oakmont alleged that the defendants committed fraud in the course of a mortgage note transaction. The complaint alleged that, in March 2012, defendants Peter Andrews and Gregory Palmer solicited Oakmont to purchase a set of 171 mortgage notes. Andrews and Palmer are the principals for the two corporate defendants, Dreambuilder Investments LLC ("Dreambuilder") and 2012-1 JV Holdings LLC ("JV Holdings"). Oakmont claimed that it agreed to the purchase and that, over the course of several e-mail exchanges and telephone conversations, its principals, Thomas Dunkel and Joseph Downs, negotiated and arranged the deal with Andrews and Palmer. Compl. ¶¶ 4-5, 15-21.

Oakmont allegedly wired $740,707.47 to the defendants on March 30, 2012. The defendants, however, failed to deliver all of the notes to Oakmont as provided in the purchase agreement, and many of the notes the defendants did deliver were deficient in some regard. Oakmont alleged that the defendants used its money to fund unrelated transactions on and after March 30, 2012 and continued to use Oakmont's funds as part of a Ponzi scheme, all to the financial detriment of Oakmont. The complaint asserted that the defendants' actions constituted a fraud perpetrated against Oakmont. Id. ¶¶ 21-28, 32, 36-37, 44, 48.

Oakmont claimed that federal diversity jurisdiction over its claims existed because it is domiciled in and operates out of Pennsylvania, whereas Andrews and Palmer were citizens of New York and New Hampshire, respectively, and the two defendant entities were domiciled in and operated from New York. Id. ¶¶ 7-9.

Two months later, on November 15, 2012, Oakmont filed a motion for a temporary restraining order, seeking sequestration of the money it was purportedly still owed by the defendants. Along with its motion, Oakmont for the first time presented the Court with some of the documents underlying the mortgage loan sale transaction. It became immediately clear from a review of those documents that Oakmont had not in fact entered into the contract to purchase the notes at issue. Instead, an entity named Remar Investments, LP ("Remar") had signed the March 30, 2012 Mortgage Loan Sale Agreement to buy the notes. Pl.'s Mot. for TRO, Ex. 3 (Docket No. 8-2).

During a telephone conference regarding Oakmont's motion, both defendants' counsel and the Court voiced concern that Remar, and not Oakmont, had been the party that purchased the mortgage notes, but that Oakmont was the plaintiff pursuing this lawsuit. See 11/15/12 Hr'g Tr. at 4:2-8, 5:7-12, 6:21-24. Counsel for Oakmont maintained, however, that Oakmont had been the party who sent the money to Dreambuilder. He stated to the

Court that "the injured party is who sent that 740, and that injured party is Oakmont."  Id. at 6:25-7:11.

The Court also noted its concern that diversity jurisdiction was lacking.  It explained to Oakmont's counsel that the citizenship of limited liability companies ("LLCs"), such as Oakmont, Dreambuilder, and JV Holdings, was determined by the citizenship of their members.  Id. at 8:11-10:1.  Oakmont's counsel represented, and defendants' counsel did not challenge, that Oakmont's two members are Dunkel and Downs, both of whom are citizens of Pennsylvania.  Id. at 9:12-21.  The attorney for the defendants also admitted that Andrews and Palmer were the only members of Dreambuilder and JV Holdings, making those entities citizens of both New York and New Hampshire.[1]  Id. at 8:17-9:9.

Approximately one month later, in December 2012, the defendants filed a motion to dismiss.  Among other things, the defendants argued that Oakmont had no interest in this case because Remar was the party that signed the contract to purchase the notes from JV Holdings.  The defendants also provided a bank record revealing that Remar, and not Oakmont, had wired the money to fund the transaction.  In short, the defendants stated that they had "no idea what Oakmont is doing in this litigation as a plaintiff."  Def'ts' 12/21/12 Br. at 8-9.

---

[1] Following that conference, the Court denied Oakmont's motion for a temporary restraining order.

In response, Oakmont for the first time admitted that it had not paid for the mortgage notes and that the money for the deal had come from Remar. Pl.'s 1/11/13 Br. at 5. Oakmont still contended that it was the aggrieved party, though. Oakmont submitted an exhibit reflecting the fact that, on May 16, 2012, Remar executed an "Assignment of Promissory Notes," through which it assigned its rights to the 171 mortgage notes purchased from the defendants to an entity named USMR Fund 2, LLC ("USMR"). Pl.'s App'x, Ex. A (Docket No. 25-15). In its opposition brief, Oakmont argued that it and Remar jointly owned USMR.

The Court held oral argument on the defendants' motion to dismiss on February 8, 2013. That morning, the Court received a letter from Daniel Miller of Remar Holdings LLC, the entity that managed Remar, stating that "[a]ll rights or interests Remar had or may have had have been transferred and relinquished by assignments and subsequent agreements among Remar, USMR Fund 2, LLC, Oakmont Note Group, LLC, and its principals Joseph Downs and Thomas Dunkel." 2/4/13 Letter from D. Miller. According to Oakmont's counsel, Miller had sent the letter at his request to demonstrate to the Court that Oakmont was the proper plaintiff. 2/8/13 Hr'g Tr. at 4:5-13. At oral argument, the Court noted that the letter did not at all resolve the issue of Oakmont's standing to bring this suit. The statements in the letter were not sworn and the letter did not definitively identify the

ultimate assignee of Remar's contractual rights or evidence the nature of all referenced assignments. In short, the letter did not provide the Court with any proof of Oakmont's interest in the litigation. Id. at 4:14-10:12.

The Court also expressed concern that, even after it became clear that Remar was the initial note purchaser and provided the money for the transaction, the complaint was never amended to reflect that fact. Id. at 6:23-7:8. Instead, the complaint still contained the demonstrably false assertion that Oakmont had bought the notes. In the end, the Court noted that Oakmont's presentation of its case made it difficult to discern the proper plaintiff or plaintiffs to the suit. Id. at 45:16-21, 47:5-18.

As of the end of May 2013, following a period of discovery relating to the existence of personal jurisdiction over the defendants, Oakmont still had not provided the Court with documentation substantiating its claim that it had an interest in the underlying notes or the money used to purchase them. On May 24, 2013, the Court issued an order to show cause, directing Oakmont to demonstrate by written submission and through documentary proof, on or before June 3, 2013, why it had standing to bring this suit. 5/24/13 Order (Docket No. 53). The Court's order referenced the other occasions on which Oakmont's interest in the underlying note purchase had been questioned by both the

Court and opposing counsel.

On June 3, 2013, Oakmont submitted a response to the Court's order, including several documents evidencing that, as of January 30, 2013, Remar and Oakmont were the two members of USMR. Oakmont's exhibits also established that, in January 2013, over four months after this suit was brought, Remar assigned all of its ownership interest in USMR to Oakmont, making Oakmont USMR's sole member. In exchange, Oakmont executed a promissory note for $359,707.47, which was guaranteed by Dunkel and Downs.[2] See Pl.'s Response to 5/24/13 Order, Exs. 2-8 (Docket No. 54). Oakmont argued that this transfer, which resulted in Oakmont's "exclusive ownership of USMR," made Oakmont "the only party with any interest in the notes." Pl.'s Response to 5/24/13 Order at 4.

That is not so. At best, Oakmont's documentation makes clear that it is the only owner of USMR, the party that does have an interest in, but has never received all of, the 171 notes originally purchased by Remar. Any injury suffered by Oakmont is felt derivatively as a member of USMR.

Oakmont's documentation did establish that it had standing in a constitutional sense. A financial interest in an aggrieved corporate entity appears to be sufficient to establish

---

[2] None of the documents transferring Remar's ownership interest in USMR to Oakmont or creating Oakmont's monetary obligation to Remar references the mortgage note transaction involving the defendants.

-8-

standing under Article III.  Cf. Gollust v. Mendell, 501 U.S. 115, 125-27 (1991) (finding that a security holder must retain, throughout the course of a litigation, an interest in the issuer on whose behalf he sues, or else standing under Article III would be placed in jeopardy).

Even so, Oakmont's documented interest in USMR did not resolve all issues pertinent to this Court's subject matter jurisdiction.  On August 5, 2013, the Court issued a second order to Oakmont in an attempt to clarify the jurisdictional issues once and for all.  8/5/13 Order (Docket No. 59).

As explained in that detailed order, Oakmont could not sue in its own right for the wrongs alleged, given that it was actually USMR who had a contractual right to the mortgage notes.  Under Pennsylvania law, a member of a LLC cannot sue in its own name for injuries to the limited liability company.  15 Pa. Cons. Stat. Ann. § 8991(b).  Nevertheless, any member of a LLC may sue on behalf and "in the name of the company" in which it holds a membership interest.  Id. § 8992(1).  Federal Rule of Civil Procedure 17(a) also requires that federal civil actions "must be prosecuted in the name of the real party in interest."  Fed. R. Civ. P. 17(a)(1).  The Court informed the parties that, in accordance with Pennsylvania law and the Federal Rules of Civil Procedure, this suit should have been brought in the name of USMR, the real party in interest, and not in Oakmont's own name.

The Court went on to explain that it was required to consider the citizenship of the real party in interest when determining whether it has subject matter jurisdiction based on diversity among the parties. See Navarro Sav. Ass'n v. Lee, 446 U.S. 458, 460-61 (1980); Choi v. Kim, 50 F.3d 244, 246 (3d Cir. 1995); see also Fed. R. Civ. P. 17(a)(3) ("[T]he action proceeds as if it had been originally commenced by the real party in interest.").[3] For purposes of diversity jurisdiction, citizenship of the parties is determined as of the date on which the suit was commenced. Grand Union Supermarkets of the V.I., Inc. v. H.E. Lockhart Mgmt., Inc., 316 F.3d 408, 410 (3d Cir. 2003) (citing Smith v. Sperling, 354 U.S. 91, 93 n.1 (1957)). Thus, to establish subject matter jurisdiction in this case, the Court informed the parties that it was required to determine the citizenship of USMR as of September 13, 2012.

In its August 5 order, the Court reiterated what it said to the parties during the telephone conference regarding Oakmont's motion for a temporary restraining order: a LLC, such as USMR, assumes the citizenship of its members. Zambelli Fireworks Mfg. Co. v. Wood, 592 F.3d 412, 420 (3d Cir. 2010).

---

[3] Under Federal Rule of Civil Procedure 17(a), an appropriate amount of time must be given for the real party in interest to either ratify, join, or substitute itself as the plaintiff before it will be treated as the party that "originally commenced" the suit. Because Oakmont is the sole member of USMR and both entities appear to be run by the same principals, the Court concludes that USMR has effectively ratified prosecution of this suit.

When this suit began, Oakmont had not yet executed the documents that transferred to it all membership interest in USMR. At that time, noted the Court, Remar and perhaps other entities or individuals were members of USMR. The Court explained that Remar itself was a limited partnership and, as a result, it also adopted the citizenship of each of its members. Id. at 419; Swiger v. Allegheny Energy, Inc., 540 F.3d 179, 182 (3d Cir. 2008) (citing Carden v. Arkoma Assocs., 494 U.S. 185, 187-92 (1990)).

The Court's order, which cited the above-referenced authorities, explained that Oakmont had not established USMR's complete membership as of the date on which this suit was filed; nor had it provided information regarding Remar's partners and their citizenship as of that same date. Without this information, the Court could not establish USMR's citizenship. The order concluded by instructing Oakmont to "provide this information, and any other information pertinent to determining USMR's citizenship" by August 9, 2013. 8/5/13 Order.

On August 9, Oakmont responded to the Court's order. Among other things, it provided another affidavit from Daniel Miller, the manager of Remar Holdings LLC ("Remar Holdings"), and certain business records associated with Remar and Oakmont. After reviewing Oakmont's submission, the Court finds that Oakmont has not carried its burden of establishing the existence

of federal subject matter jurisdiction.

In his affidavit, Miller states that "Remar . . . is administered by Remar Holdings LLC, a Nevada limited liability company, and owned in part by an individual residing in California, a California Revocable Family Trust and a Nevis limited liability company." Miller goes on to state that "[n]one of the members of any of these entities is a citizen of New York . . . or New Hampshire," the states in which the defendants are citizens. Miller Aff. ¶¶ 3-4. Although the representation that Remar Holdings "administer[s]" Remar is somewhat unclear, Oakmont has also submitted a Nevada business record listing Remar Holdings as the "General Partner" of Remar.

Even accepting that Remar Holdings is a partner in Remar, there are problems with the information provided by Miller. First, it is somewhat unclear whether Miller has stated that Remar Holdings, the California resident, the trust, and the Nevis LLC are all partners in Remar or whether he means to say that Remar Holdings has a partnership interest in Remar, and the other two entities and one individual are members of Remar Holdings. The Court thinks the first interpretation is more in line with the structure of Miller's sentence. In its motion, however, Oakmont states that Remar Holdings is the administrator of Remar and the California resident, the trust, and the Nevis LLC are owners of Remar Holdings. See Pl.'s Response to 8/5/13

Order ¶¶ 8-9. Accepting Oakmont's reading, the Court does not know the other partners forming Remar's partnership, and, therefore, cannot make any determinations as to the citizenship of Remar or, by extension, USMR.

Second, assuming that the three entities and one individual listed constitute the full set of Remar partners, the jurisdictional evidence is still insufficient. With respect to individuals, their citizenship is governed by the state of their domicile. Swiger, 540 F.3d at 182. Domicile, unlike residency, is measured by physical presence within a jurisdiction "coupled with a subjective intention to remain there indefinitely." Washington v. Hovensa LLC, 652 F.3d 340, 344 (3d Cir. 2011). Evidence of an individual's residency is insufficient to establish that individual's citizenship. McNair Synapse Grp., Inc., 672 F.3d 213, 219 n.4 (3d Cir. 2012); Krasnov v. Dinan, 465 F.2d 1298, 1300 (3d Cir. 1972). Thus, the representation that "an individual *residing* in California" partly owns either Remar or Remar Holdings is not determinative of the citizenship of that individual or the entity he or she owns.

The Court likewise cannot determine for itself the actual citizenship of Remar Holdings, the "California Revocable Family Trust," or the "Nevis limited liability company." Both Remar Holdings and the Nevis entity take on the citizenship of all of their members. Zambelli Fireworks, 592 F.3d at 420.

Similarly, the California trust has the citizenship of all of its beneficiaries and trustees. <u>Emerald Investors Trust v. Gaunt Parsippany Partners</u>, 492 F.3d 192, 205 (3d Cir. 2007). The fact that Miller refers to these entities as a "Nevada limited liability company," a "Nevis limited liability company," and a "California Revocable Family Trust" suggests to the Court that he and Oakmont believe the entities' principal places of business are relevant to their citizenship. They are not. It is membership alone that matters.

Oakmont has not offered any comprehensive list of the members of these entities, and the Court simply cannot accept Miller's blanket assertion that none of the members of any of these entities shares the same citizenship as any of the defendants. For one thing, Miller's basis of knowledge for making that statement is not at all clear. He may be the manager of Remar Holdings, but he has not established if and how he knows all of the members of the other entities. Miller has not even identified these entities by name. That being so, the Court is in no position to accept his representation that these entities are actually a trust and two LLCs.

This suit has been pending since September 2012. On numerous occasions, the Court has noted the lack of precision in Oakmont's presentation of its allegations and documentation, which have throughout caused the Court to question Oakmont's

standing and the basis for subject matter jurisdiction.  After nearly a year of litigation and even after the Court's most recent order directing Oakmont to establish USMR's citizenship as of when this suit was filed, threshold jurisdictional questions remain.  The Court has done all it can.  At bottom, Oakmont has not carried its burden of showing that subject matter jurisdiction exists.  See Hertz, 559 U.S. at 96; Nuveen Mun. Trust, 692 F.3d at 293.  The Court will, therefore, dismiss this suit without prejudice.

An appropriate order shall issue separately.